Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 27 2014, 7:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARQUISE LEE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1310-CR-869 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
Cause No. 49G05-1209-MR-62632

**May 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Marquise Lee appeals his conviction for attempted aggravated battery, a Class B felony, following a bench trial. Marquise raises a single issue for our review, which we restate as whether the State presented sufficient evidence to support his conviction. We affirm.

## FACTS AND PROCEDURAL HISTORY

Tiara Robertson[1] used to date Brandon Lee and was good friends with Brandon's sister, Latoya Lee. Latoya is Marquise's mother.

Sometime before September of 2012, Tiara left Brandon and began dating Ramon Gude. This upset Latoya and, on September 5, 2012, Latoya confronted Tiara at Tiara's and Ramon's shared residence. Ramon interceded in this argument and hit Latoya in the face. Latoya was "mad" and left saying, "I'll be back." Transcript at 32.

On September 7, Latoya returned to Tiara's and Ramon's residence. Latoya was accompanied by Marquise, Billy Young (a cousin of Latoya and Brandon), and a third, unknown man. Tiara was upstairs when they arrived but rushed downstairs when she heard Ramon yelling. Upon arriving downstairs, she observed Marquise attacking Ramon, who was trying to get inside. Tiara tried to help pull Ramon inside the house during the attack. Latoya told Tiara to "get out of the way." Id. at 39.

Once inside the residence, Ramon "balled up" his body while the three men came inside to continue their attack. Id. Tiara then observed Billy hand a firearm and clip to Marquise. But Marquise was not able to load the clip into the firearm. While Tiara

___

[1] The Appellant's Brief refers to Tiara as "Tiara Richardson," Appellant's Br. at 2, and the Appellee's Brief refers to Tiara as "Tiara Robinson," Appellee's Br. at 2. But Tiara named herself as "Tiara Robertson" during trial. Transcript at 20.

2

watched Marquise fumble with his clip and firearm, Billy was in her line of sight, and Latoya was outside. Tiara then heard several gunshots from the direction of the unknown man and observed that Marquise and Billy "looked . . . surprised." Id. at 76. Ramon collapsed, the assailants fled, and Tiara called 9-1-1. A neighbor heard the gunshots, witnessed the assailants flee the scene, and recognized the female assailant from the September 5 argument. Ramon died later that day from his gunshot wounds.

On September 24, the State charged Latoya, Marquise, and Billy[2] with murder, a felony, and conspiracy to commit murder, a Class A felony. The defendants were tried jointly to the bench on September 9 and 10, 2013. Following the close of the State's evidence, the trial court granted the defendants' motion for involuntary dismissal of the murder and conspiracy to commit murder charges but kept the case open for consideration of lesser-included battery charges. Following the trial, the court found Marquise guilty of attempted aggravated battery, a Class B felony, and sentenced him to fifteen years.[3] This appeal ensued.

## DISCUSSION AND DECISION

On appeal, Marquise asserts that the State failed to present sufficient evidence to show that he committed attempted aggravated battery, a Class B felony.[4] When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and the reasonable

[2] The third man was never identified or charged.

[3] The court entered the same conviction and sentence for Latoya and Billy.

[4] There is no dispute that attempted aggravated battery is a lesser-included offense to murder.

3

inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

Pursuant to Indiana Code Section 35-42-2-1.5, to demonstrate that Marquise committed aggravated battery the State needed to show that he "knowingly or intentionally inflict[ed] injury on a person that create[d] a substantial risk of death or cause[d]: (1) serious permanent disfigurement . . . ." And one attempts a crime when, "acting with the culpability required for the commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1. On appeal, Marquise asserts that there was no evidence of his intent and that Ramon's injuries from Marquise's acts do not support the judgment.[5]

In essence, the trial court concluded that the State had demonstrated that Marquise intended at least to severely beat Ramon but was interrupted when the unknown man at the scene murdered Ramon. And the trial court's conclusion is supported by the evidence. We agree with the State that the evidence shows that Marquise and his companions intended to inflict the type of injuries on Ramon that are contemplated in the aggravated battery statute. Appellee's Br. at 10. The State demonstrated that Marquise arrived at Ramon's residence with Latoya less than forty-eight hours after Ramon had struck Latoya in an argument. Latoya left that argument with the admonition that she

---

[5] We need not address the parties' arguments on accomplice liability because Marquise was an active participant.

4

would return, and when she did return, Marquise, Billy, and the unknown man were with her.

The men immediately proceeded to attack Ramon. Marquise was the first to attack him, and the men continued to beat Ramon as Tiara pulled him into the residence and Ramon "balled up" his body to protect himself. Transcript at 39. Further, at least two of the men were armed, and Marquise held one of the firearms at the time Ramon was murdered.

The State's evidence sufficiently demonstrates that Marquise intended to inflict injury to Ramon that would have created a substantial risk of either his death or disfigurement and that Marquise took a substantial step toward the commission of that crime. That the attack was brought to an unexpected halt by the unknown man shooting Ramon does not absolve Marquise of liability for his own conduct. Further, it is irrelevant that the doctor who examined Ramon's body did not find evidence of blunt force trauma on Ramon's body. Tiara's testimony demonstrated the severity of Marquise's actions, and we will not reweigh her testimony. Accordingly, we affirm Marquise's conviction.[6]

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.

---

[6] Because we affirm Marquise's conviction, we need not consider his argument that he should have been convicted instead of a misdemeanor battery. Further, contrary to the State, we do not read the Appellant's Brief to raise a "variance" argument. See Appellee's Br. at 12. Insofar as Marquise intended to make such an argument, it is waived. Ind. Appellate Rule 46(A)(8)(a).